### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00292

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**PNEULINE SUPPLY, INC.,**

    Defendant.

### COMPLAINT

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 against Defendant Pneuline Supply, Inc. ("Pneuline") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Lyubov Mezentseva, an individual with a disability as defined by the ADA. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges Pneuline discharged Mezentseva because of her disability and/or the need to accommodate her disability. The EEOC further alleges that Pneuline retaliated against Mezentseva because she engaged in protected activity.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA.

2. 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3); Section 503 of the ADA, 42 U.S.C. § 12203; and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

4. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. At all relevant times, Pneuline, a Colorado corporation, has continuously been doing business in the State of Colorado and the City of Greeley.

6. Pneuline had 15 or more employees for each working day in each of 20 or more calendar weeks in 2017 and/or 2018.

2

7. At all relevant times, Pneuline has been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

8. At all relevant times, Pneuline has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

9. Pneuline is a certified manufacturer of plastic check valves, filters, fittings, and components.

10. Pneuline products are distributed worldwide and are used in automotive, medical, bio-pharmaceutical, chemical, agricultural, water, and beverage industry applications.

## ADMINISTRATIVE PROCEDURES

11. More than 30 days prior to the institution of this lawsuit, Lyubov Mezentseva filed a charge of discrimination with the EEOC alleging Pneuline violated the ADA.

12. The EEOC provided Pneuline notice of the charge of discrimination.

13. The EEOC investigated the charge of discrimination.

14. Based on the evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Pneuline violated the ADA.

15. The determination the EEOC sent to Pneuline included an invitation to join the EEOC in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

16. On July 26, 2021, the EEOC notified Pneuline that the conciliation process did not result in an agreement between the parties.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

18. Since at least 2018, Pnueline has engaged in unlawful employment practices in violation of Section 102 of Title I and Section 503 of Title V of the ADA, 42 U.S.C. § 12112 and 42 U.S.C. § 12203.

19. Lyubov Mezentseva is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

20. Mezentseva has a severe hearing impairment that substantially limits the major life activity of hearing.

21. Mezentseva can communicate fluently in American Sign Language ("ASL"), as well as Russian Sign Language and written Russian.

22. Mezentseva has a limited understanding of, and limited ability to communicate in, English.

23. On May 8, 2017, Pneuline hired Mezentseva as an Assembler.

24. Pneuline utilizes Assemblers as part of its Production Department to manufacture, measure, and test various products such as valves.

25. During or before the fall of 2017, Pneuline changed Mezentseva's job duties.

4

26. The change in job duties did not result in a change to Mezentseva's job title or department; she remained an Assembler in the Production department.

27. Mezentseva's new job duties primarily included using a laser printer to etch the required markings or codes on trays of valves or other products.

28. Mezentseva satisfactorily performed these new job duties.

29. In May 2018, Mezentseva's supervisor reported that Mezentseva always arrived on time and notified management if she would be late or missing.

30. In May 2018, Mezentseva's supervisor also reported that Mezentseva had good attention to detail.

31. Pneuline's President Rusty Wilhelm did not observe any problems with Mezentseva's work.

32. Due to noise levels, Pneuline's Production employees do not communicate while working and most wear hearing protection while working.

33. For the first several weeks of Mezentseva's employment with Pneuline, the Colorado Division of Vocational Rehabilitation provided a certified ASL interpreter.

34. The Colorado Division of Vocational Rehabilitation also provided and installed a monitor with a video phone system for Mezentseva's use at Pneuline.

35. On or around June 27, 2017, Pneuline hired Mezentseva's daughter Victoria for an open position in the Production Department.

36. Until May 2018, Pneuline provided Victoria as an ASL interpreter for Mezentseva during employee meetings.

37. Until May 2018, Pneuline also provided Victoria as an ASL interpreter for Mezentseva at work as needed.

38. Victoria Mezentseva is not a certified ASL interpreter.

39. On or around January 18, 2018, Mezentseva filed a grievance with Pneuline's Human Resources Department ("HR").

40. In her January grievance Mezentseva stated that she had attempted to communicate with an interim Production Supervisor during a group conversation but that the supervisor walked away mid-sentence.

41. HR Representative Kyna Kalinowski added a comment to Mezentseva's January grievance that she would speak with the interim Production Supervisor to encourage being more mindful of others' attempts to communicate.

42. To the extent Pneuline took any action based on Mezentseva's January grievance, the action was ineffective because Mezentseva continued to experience similar discriminatory treatment.

43. On March 21, 2018, Mezentseva filed a second grievance with HR.

44. In her March grievance Mezentseva stated that she was again excluded from a work-related group discussion, and that being excluded from workplace discussions had been an ongoing issue.

45. Mezentseva also stated in her March grievance that she was very upset about continuing to be excluded from work conversations, even after President Wilhelm met with the entire Production Department and counseled them about how to communicate with her and not to exclude her.

46. HR Representative Kalinowski added a comment to Mezentseva's March grievance that she had another discussion with all the employees named in the grievance and informed them that it is important to be mindful of Mezentseva's disability and for her to be included.

47. To the extent Pneuline took any action based on Mezentseva's March grievance, the action was ineffective because Mezentseva continued to experience similar discriminatory treatment.

48. On April 12, 2018, Mezentseva filed a third grievance with HR.

49. In her April grievance Mezentseva stated that co-workers continued to ignore her and leave her out of work-related conversations.

50. On April 12, 2018, in response to Mezentseva's grievance, Pneuline created a Corrective Action Report.

51. The Corrective Action Report identified the issue as "ineffective communication between all production [with regard] to accommodation of disabled co-worker."

52. The Corrective Action Report determined the "root cause" to be that "employees are untrained in ADA accommodation."

53. The Corrective Action Report listed "implement accommodation training" as the action to resolve the issue, but listed the implementation date as "Pending."

54. The Corrective Action Report included a blank line for the closing date.

55. On May 2, 2018, Mezentseva encountered Quality Manager Barb Ingvall meeting with other Assemblers from the Production Department.

56. Mezentseva was not invited to or included in the conversation.

57. Because of her hearing impairment, Mezentseva was unable to hear or understand the substance of this conversation.

58. On the morning of May 4, 2018, Mezentseva went to HR Representative Kalinowski and complained about being excluded from the May 2, 2018 conversation with Quality Manager Ingvall.

59. HR Representative Kalinowski told Mezentseva that President Wilhelm would address the ongoing communication issues at a Production Department meeting on the afternoon of May 4.

60. Mezentseva's daughter interpreted for Mezentseva at the May 4 Production Department meeting.

61. After a presentation from President Wilhelm that was unrelated to Mezentseva's complaint, HR Representative Kalinowski asked the Production Department employees if there was anything they would like to comment on or address.

62. Because Kalinowski had previously told Mezentseva that Wilhelm would address her concerns at the Production Department meeting that day, Mezentseva understood Kalinowski's call for comments to be an invitation for Mezentseva to raise the concerns she and Kalinowski had discussed earlier that day.

8

63. Mezentseva described recent incidents where she felt excluded from work-related conversations and meetings, including the May 2 incident with Quality Manager Ingvall.

64. Mezentseva said that what she experienced was discrimination.

65. Quality Manager Ingvall then apologized and explained that she had not realized Mezentseva was behind her and that the conversation was about an inventory discrepancy that did not involve Mezentseva.

66. On May 11, 2018, Quality Manager Ingvall filed a grievance against Mezentseva because of her complaint of discrimination raised at the May 4 meeting.

67. In her grievance, Quality Manager Ingvall stated she was uncomfortable working with Mezentseva due to the accusation of discrimination.

68. On May 14, 2018, President Wilhelm issued a memo that future Production Department meetings will be scheduled in advance and employees will be provided a printed agenda beforehand.

69. The memo also directed that "production meetings are not the appropriate place to air or address any personal grievances or issues. Any incidents or grievances should be submitted via either an Incident Report or Grievance forms."

70. On May 15, 2018, management called Mezentseva to a meeting with President Wilhelm, HR Representative Kalinoswki, and Production Supervisor Marco Aguayo.

71. The purpose of the May 15 meeting was to discuss Mezentseva's annual performance review as well as a disciplinary action form based on Quality Manager Ingvall's grievance.

72. Mezentseva's daughter Victoria interpreted at the meeting.

73. At the meeting, Mezentseva requested a certified ASL interpreter for the meeting.

74. Mezentseva explained that she felt the allegations being discussed were making her daughter nervous and emotional about interpreting.

75. The meeting was delayed until Pneuline could arrange for an interpreter.

76. On Friday May 18, 2018, Pneuline held another Production Department meeting.

77. No interpreter was provided for Mezentseva at the May 18, 2018, meeting.

78. Mezentseva attended the May 18 meeting, but was unable to participate or understand what was said.

79. On the evening of Friday May 18, Mezensteva emailed HR Representative Kalinowski a formal written accommodation request for a certified ASL interpreter at employee meetings.

80. Mezentseva composed this email and completed the written accommodation form with the help of her daughter.

10

81. On or around the morning of Monday May 21, 2018, HR Representative Kalinowski denied Mezentseva's accommodation request.

82. On or around May 21, 2018, HR Representative Kalinowski sent Mezentseva an email noting that Pneuline had already provided "Email and the option to write/type for communication."

83. In another email sent to Mezentseva on or around May 21, 2018, HR Representative Kalinowski again noted that "emailing and/or writing out on paper any question or comments you have is always an option available to you."

84. Subsequently, HR Representative Kalinowski handwrote a note to Mezentseva, saying "fluent English is a requirement of the job. But we will attempt to get an interpreter for you."

85. Fluent English was not a requirement of the job.

86. Mezentseva was never before told that fluent English was a job requirement.

87. And during the May 4 meeting, Assembler Myrna Monarrez spoke in Spanish while another employee interpreted for her, and later provided a written statement in Spanish, that includes a comment stating she does not speak English.

88. Pneuline rescheduled to May 24, 2018, the meeting to discuss Mezentseva's annual performance review and the disciplinary form.

89. The May 24, 2018 meeting was attended by Mezentseva, President Wilhelm, HR Representative Kalinowski, and Supervisor Aguayo.

90. Pneuline provided a certified ASL interpreter at the May 24 meeting.

11

91. The disciplinary form asserted that Mezentseva's comments at the May 4 meeting allegedly violated company handbook policies regarding filing complaints (Section 4.1), as well as policies against unprofessional conduct, false accusations, derogatory statements, and creating a hostile work environment (Section 4.3).

92. After the May 24, 2018 meeting, HR Representative Kalinowski became concerned about how Pneuline was going to communicate with Mezentseva without her daughter interpreting.

93. HR Representative Kalinowski suggested discharging Mezentseva because she believed Pneuline could discharge employees at any time.

94. President Wilhelm and HR Representative Kalinowski felt that based on the May 4th meeting, it was time for Mezentseva to find other employment "rather than trying to overcomplicate things by having her stay."

95. On or around May 31, 2018, Pneuline discharged Mezentseva.

96. Mezentseva's discharge letter explained "[t]he reason for termination is for violation of company policy outlined in Employee Handbook Rev. 000 Section 4.3 regarding the incident that occurred on May 4th, 2018 at the production department meeting."

97. Pneuline had never previously fired any employee for allegedly violating company polices.

98. At the time of discharge, Pneuline knew Mezensteva had an impairment that substantially limited the major life activity of hearing.

99. When Mezensteva was discharged, she was qualified to perform the essential functions of her job, with or without reasonable accommodation.

100. At no time did Pneuline conduct an individualized assessment of Mezentseva's capabilities and limitations and the responsibilities of her particular job.

101. At no time in 2018 did Pneuline meet with Mezentseva to engage in an interactive process to identify any potential accommodations for her limitations.

102. At the time of her discharge, Pneuline knew Mezensteva had reported to the company conduct she felt was disability-based discrimination.

## FIRST CLAIM FOR RELIEF
**Disparate Treatment Based on Disability and/or the Need to Provide Accommodation
(42 U.S.C. §§ 12112(a) and (b)(5)(B))**

103. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

104. At all relevant times, Mezentseva was an individual with a disability under the ADA. 42 U.S.C. § 12102.

105. At all relevant times, Mezentseva was qualified and able to perform the essential functions of her position at Pneuline, with or without reasonable accommodation.

106. Pneuline discharged Mezentseva.

107. Pneuline discharged Mezentseva because of her hearing disability, or because of the need to reasonably accommodate her hearing disability.

108. The effect of the practices complained of in the foregoing paragraphs has been to deprive Mezentseva of equal employment opportunities because of her disability, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B).

109. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Mezentseva and to deprive her of the financial and other benefits of working for Pneuline.

110. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

111. The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to Mezentseva's federally protected rights.

**SECOND CLAIM FOR RELIEF**
**Retaliation**
**(42 U.S.C. § 12203)**

112. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

113. At all relevant times, Mezentseva was an individual with a disability under 42 U.S.C. § 12102.

114. At all relevant times, Mezentseva was qualified and able to perform the essential functions of her position at Pneuline, with or without reasonable accommodation.

115. Mezentseva complained of disability discrimination in her grievance filed in January 2018.

116. Mezentseva complained of disability discrimination in her grievance filed in March 2018.

117. Mezentseva complained of disability discrimination in her grievance filed in April 2018.

118. Mezentseva complained of disability discrimination when she orally complained to HR in the morning on May 4, 2018.

119. Mezentseva complained of disability discrimination during the meeting later in the day on May 4, 2018.

120. Mezentseva's complaints of discrimination are protected conduct under the ADA.

121. Mezentseva requested a reasonable accommodation on May 18, 2018.

122. Mezentseva's request for accommodation is protected conduct under the ADA.

123. Pneuline discharged Mezentseva on May 31, 2018.

124. Pneuline discharged Mezentseva in retaliation for her protected conduct under the ADA.

125. Pneuline engaged in unlawful employment practices, in violation of Section 503 of the ADA, 42 U.S.C. § 12203, by retaliating against Mezentseva because she engaged in protected activity by complaining of discrimination and requesting a reasonable accommodation.

126. The effect of the practices complained of in the forgoing paragraphs has been to deprive Mezentseva of equal employment opportunities because she engaged in protected activity.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Pneuline, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with Pneuline, from engaging in any employment practice which discriminates on the basis of disability and from retaliating against employees who oppose such unlawful employment practices;

B. Order Pneuline to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Pneuline to make Mezentseva whole by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Mezentseva, or front pay in lieu thereof;

D. Order Pneuline to make Mezentseva whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment

practices described above, including but not limited to relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial;

  E. Order Pneuline to make whole Mezentseva by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of credit standing, and stress, in amounts to be determined at trial;

  F. Order Pneuline to pay Mezentseva punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial;

  G. Grant such further relief as this Court deems necessary and proper in the public interest, and;

  H. Award the EEOC its costs of this action.

RESPECTFULLY SUBMITTED this 1st day of February, 2022.

        Christopher Lage
        Deputy General Counsel

        Gwendolyn Young Reams
        Associate General Counsel

        Mary Jo O'Neill
        Regional Attorney
        Phoenix District Office

        Rita Byrnes Kittle
        Supervisory Trial Attorney

        */s/ Karl Tetzlaff*
        Karl Tetzlaff
        Michael LaGarde

>Trial Attorneys
>EQUAL EMPLOYMENT
>OPPORTUNITY COMMISSION
>Denver Field Office,
>950 17th Street, Suite 300
>Denver, CO 80202
>Phone: 720-779-3619
>Email: karl.tetzlaff@eeoc.gov
>        michael.lagarde@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.